## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **ELMO ANDREW SOIGNET, III,** | § | |
| | § | |
| **PLAINTIFF,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 3:20-cv-02418-K** |
| | § | |
| **RICKY ROSS,** | § | |
| | § | |
| **DEFENDANT.** | § | |

## PLAINTIFF'S BRIEF IN SUPPORT OF RESPONSE TO DEFENDANT'S MOTION TO DISMISS COMPLAINT, OR IN THE ALTERNATIVE, TO TRANSFER VENUE

Cathy L. Altman
  State Bar No. 00794946
  caltman@ccsb.com
Monica Gaudioso
  State Bar No. 24084570
  mgaudioso@ccsb.com
 CARRINGTON COLEMAN SLOMAN
  & BLUMENTHAL, L.L.P.
901 Main Street, Suite 5500
Dallas, Texas  75202
(214) 855-3000
FAX (214) 580-2641

Thomas P. Henican (Texas Bar No. 24075926)
(*pro hac vice* to be filed)
RIESS LEMIEUX, LLC
1100 Poydras Street, Suite 1100
New Orleans, Louisiana 70163
Telephone:  (504) 581-3300
Facsimile:  (504) 581-3310
Email:  thenican@rllaw.com

**Attorneys for Plaintiff Elmo Andrew Soignet, III**

# TABLE OF CONTENTS

TABLE OF CONTENTS ...................................................................................................i

TABLE OF AUTHORITIES..............................................................................................ii

INTRODUCTION .............................................................................................................1

PLAINTIFF'S RESPONSE TO DEFENDANT'S
RULE 12(B)(2) MOTION TO DISMISS.........................................................................2

    A.    Factual Background. ...................................................................................2

    B.    Argument and Authorities. .........................................................................3

          1.    Legal Standard. ..............................................................................3

          2.    This Court has specific jurisdiction over Ross because Texas is
             the focal point of Ross's defamatory statements and Soignet's harm.........5

          3.    The exercise of personal jurisdiction over Ross would not offend
             traditional notions of fair play and substantial justice. ...............................8

          4.    The Court can exercise its discretion to transfer this case to
             the Eastern District of Louisiana. ............................................................10

PLAINTIFF'S RESPONSE TO DEFENDANT'S
RULE 12(B)(6) MOTION TO DISMISS.......................................................................10

PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO TRANSFER ...........................14

    A.    Argument and Authorities. ......................................................................14

          1.    Legal Standard. ............................................................................14

           2.    Ross presents no evidence, so he cannot
             carry his burden that the transfer is appropriate. .....................................15

          3.    The factors that Ross addresses do not support transferring
             this case to the Eastern District of Louisiana, and the other
             factors support keeping this case in the Northern District of Texas.........17

CONCLUSION AND PRAYER .....................................................................................19

## TABLE OF AUTHORITIES

## CASES

*Allred v. Moore & Peterson*, 117 F.3d 278, 286 (5th Cir. 1997) ....................................5

*Alpine View Co. Ltd. v. Atlas Copco AB*, 205 F.3d 208, 214 (5th Cir. 2000) ...............................3

*Bank One, N.A. v. Euro-Alamo Invs., Inc.*, 211 F. Supp. 2d 808, 812 (N.D. Tex. 2002) ........................ 15

*Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 545 (2007)...........................................11

*Calder v. Jones*, 465 U.S. 783 (1984) ...................................................4, 5

*Certain Underwriters at Lloyd's London v. Pete's Car Smart, Inc.*, Civil Action No. 3:05-CV-1147-B, 2005 WL 8158546, at *2 (N.D. Tex. Dec. 2, 2005)........................................17

*Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014)......................................................4

*Donnelly v. Klosters Rederi A/S*, 515 F. Supp. 5, 7 (E.D. Pa. 1981)............................................16

*Eagle Metal Prods., Inc. v. Keymark Enters., LLC*, 651 F. Supp. 2d 577, 585 (N.D. Tex. 2009) (Lynn, J.)...........................................................5

*Fielding v. Hubert Burda Media, Inc.*, 415 F.3d 419, 424 (5th Cir. 2005) ................................3, 6

*Gardemal v. Westin Hotel Co.*, 186 F.3d 588, 592 (5th Cir. 1999)................................................3

*Gonzalez v. Kay,* 577 F.3d 600, 603 (5th Cir. 2009) ...................................................13

*GSK Techs., Inc. v. Schneider Elec., S.A.*, No. 6:06CV361, 2007 WL 788343, at *3 (E.D. Tex. Mar. 14, 2007) ...........................................................8, 9

*Guidry v. U.S. Tobacco Co., Inc.*, 188 F.3d 619, 623 n.2 (5th Cir. 1999)....................................10

*Int'l Shoe Co. v. State of Wash.*, 326 U.S. 310, 316 (1945) ........................................3, 8

*Lewis v. Fresne*, 252 F.3d 352, 358 (5th Cir. 2001) ........................................................3

*Luv N' care, Ltd. V. Insta-Mix, Inc.*, 438 F.3d 465, 473 (5th Cir. 2006)........................................8

*McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009) ...................................................4

*NDC Invs. LLC v. Lehman Bros., Inc.*, Civil Action No. 3:05-CV-2036-D, 2006 WL 2051030, at *4 (N.D. Tex. July 21, 2006)...........................................18

*Plum Tree, Inc. v. Stockment*, 488 F.2d 754, 756–57 (3d Cir. 1973) ............................................ 15

*Prominent Fluids Control, Inc. v. Allen Process Sys., L.L.C.*, Civil Action No.
3:05-CV-2474-M, 2006 WL 8437380, at *2 (N.D. Tex. Apr. 6, 2006) ...................................... 17

*Revell v. Lidov*, 317 F.3d 467 (5th Cir. 2002) .............................................................................. 6

*Safety-Kleen Sys., Inc. v. McCoy Freightliner, Inc.*, No. 4:10-CV-608,
2011 WL 2009958, at *7 ........................................................................................................... 16

*Silver Knight Sales & Mktg., Ltd. V. Globex Int'l, Inc.*, No. 2:06-cv-123,
2006 WL 3230770 (D. C. Ohio Nov. 6, 2006) ............................................................................ 16

*Stuart v. Spademan*, 772 F.2d 1185, 1191 (5th Cir. 1985) ............................................................ 8

*Sw. Airlines Co. Profit Sharing 401(k) Comm. v. UBS Global Asset Mgmt. (Ams.), Inc.*,
No. Civ. A. 3:06CV0747-D, 2007 WL 268808, at *3 (N.D. Tex. Jan. 29, 2007) ....................... 17

*Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 512 (2002) ..................................................... 11, 13

*Transparent Energy LLC v. Premiere Mktg. LLC*, Case No. 3:19-cv-03022-L,
2020 WL 4678438, at *2 (N.D. Tex. July 28, 2020) (Fitzwater, J.) ................................. 15, 17, 18

*In re Triton Ltd. Sec. Litig.*, 70 F. Supp. 2d 678, 688 (E.D. Tex. 1999) ...................................... 15

*U.S. Brass Corp. v. Am. Gas Furnace Co.*, No. Civ. 301CV0414,
001 WL 1082416, at *3 (N.D. Tex. Aug. 29, 2001) .................................................................... 15

*Vendever LLC v. Intermatic Mfg. Ltd.*, Civil Action No. 3:11-CV-201-B,
2011 WL 4346324, at *5 (N.D. Tex. Sept. 16, 2011) .................................................................. 12

*Volkswagen Aktiengesellschaft v. Dee Eng'g, Inc.*, 1:02-cv-1669-CJM, 2003 WL 1089515
(S.D. Ind. Mar. 4, 2003) ............................................................................................................ 16

*In re Volkswagen of America, Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) ....................................... 14

*Walden v. Fiore*, 571 U.S. 277, 284 (2014) .................................................................................... 4

*World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980) .................................... 4, 8

## STATUTES

Fed. R. Civ. P. 8(a)(2)..............................................................................................................10
Fed. R. Civ. P. 12(b)(6) ......................................................................................................10, 13
28 U.S.C. § 1404 ......................................................................................................................14

Plaintiff Elmo Andrew Soignet, III files this Response to Defendant's Motion to Dismiss Complaint, or in the alternative, to Transfer Venue (the "Motion to Dismiss") and would respectfully show the Court as follows:

## INTRODUCTION

Plaintiff Ricky Ross asks the Court to dismiss this case because (1) he claims the Court does not have personal jurisdiction over him, and (2) Soignet's Complaint fails to state a claim. *See* Mot. Dismiss at 1, Dkt. No. 9. In the alternative, if the Court does not dismiss the Complaint, Ross asks the Court to transfer this case under 28 U.S.C. § 1404(a). *Id. First*, the Court should deny Plaintiff Ricky Ross's 12(b)(2) Motion because Ross intentionally made slanderous statements about Soignet's personal life, which have significant effects on his family and his business, both of which are tied to Texas—Soignet is a Texas resident and his company does significant business in Texas. *Second*, the Court should also deny Ross's 12(b)(6) Motion because the Complaint gives Ross fair notice of what the claim is and the grounds upon which it rests. *Third*, the Court should deny Ross's Motion to Transfer because he has failed to present any evidence or carry his burden to show a transfer is appropriate under Section 1404(a). As set forth below, Soignet respectfully requests that the Court deny Ross's Motion to Dismiss in its entirety.

**PLAINTIFF'S RESPONSE TO DEFENDANT'S**
**RULE 12(B)(2) MOTION TO DISMISS[1]**

**A.      Factual Background.**

As alleged in Soignet's Petition, which was filed in Texas state court on July 29, 2020,
Soignet is a Texas resident. *See* Orig. Pet. ¶ 2, Dkt. No. 8; Declaration of E. Soignet ("Soignet Decl.")
¶ 2, Ex. 1, Appx. 4. His company, Utility Construction Services, LLC ("UCS" or "the Company"),
though based in Louisiana, does significant business in Texas and across the country. *See* Orig. Pet
¶ 6; Soignet Decl. ¶ 3, Appx. 4.

Ross's wife, Becky Ross, was employed by UCS as an Administrative Assistant for almost
a year, until on or about April 7, 2020, when she was terminated. *See* Orig. Pet. ¶ 8; Soignet Decl. ¶
4, Appx. 5. A month and a half after Becky Ross was fired, Ross sent an email to Perry Dufresne.
*See* Orig. Pet. ¶ 10; Soignet Decl. ¶ 5, Appx. 5; Email from R. Ross, Ex. 1-A, Appx. 7. Mr. Dufresne
is married to UCS's Controller, Wendy Dufresne. *See* Soignet Decl. ¶ 5, Appx. 5. In the email, Ross
makes several defamatory statements, including (1) accusing Soignet of engaging in "sexual
innuendos and past patterns of behavior, especially with females" and (2) accusing Soignet of
making comments about Mrs. Dufresne's "legs and short skirt." *See* Email from R. Ross, Appx. 7.
But the most important statement that Ross made to Mr. Dufresne is the completely false statement
that Soignet and Mrs. Dufresne are engaged in an extra-marital affair—"With that said, I would be
asking the appropriate questions since your wife spends so much time with [Soignet] *including out*

---

[1]   Solely in connection with his Response to Defendant's Rule 12(b)(2) Motion to Dismiss and Defendant's Motion to
Transfer, Soignet submits his Appendix in Support of Response to Defendant's Motion to Dismiss Complaint, or in the
alternative, to Transfer Venue, filed contemporaneously herewith. Soignet does not rely on anything in the Appendix in
support of his Response to Defendant's 12(b)(6) Motion to Dismiss, and does not intend for, and objects to, the Court to
treat Defendant's 12(b)(6) Motion to Dismiss as Rule 54 motion for summary judgment under Rule 12(d).

*of town business trips*. . . . Man to Man, you should look into what I have provided you." *Id.* Despite

a formal request to retract these defamatory statements, Ross has refused to do so. *See* Orig. Pet. ¶

13; Soignet Decl. ¶ 7, Appx. 5.

**B.**     **Argument and Authorities.**

   **1.**     **Legal Standard.**

When a nonresident defendant files a motion to dismiss for lack of personal jurisdiction, the

plaintiff bears the burden of establishing the existence of personal jurisdiction over that defendant.

*Lewis v. Fresne*, 252 F.3d 352, 358 (5th Cir. 2001). The plaintiff must present a *prima facie* case for

personal jurisdiction if the district court rules on the motion to dismiss without an evidentiary

hearing. *Gardemal v. Westin Hotel Co.*, 186 F.3d 588, 592 (5th Cir. 1999) (internal citation omitted).

In deciding whether a *prima facie* case has been made, uncontroverted allegations in the plaintiff's

complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits

must be resolved in the plaintiff's favor. *Id.* (internal citation omitted).

A federal district court hearing a case in diversity may exercise personal jurisdiction to the

extent permitted for a court under applicable law of the state in which the federal court sits. *Fielding

v. Hubert Burda Media, Inc.*, 415 F.3d 419, 424 (5th Cir. 2005) (internal citation omitted). Because

the Texas long-arm statute confers jurisdiction to the limits of constitutional due process, the sole

inquiry is whether the assertion of personal jurisdiction over a defendant comports with federal due

process guarantees. *Alpine View Co. Ltd. v. Atlas Copco AB*, 205 F.3d 208, 214 (5th Cir. 2000).

The due process inquiry permits a court to exercise jurisdiction over a nonresident defendant

when (1) the defendant has purposefully availed itself of the benefits and protections of the forum

state by establishing "minimum contacts" with that state; and (2) the exercise of jurisdiction over

that defendant "does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe*

*Co. v. State of Wash.*, 326 U.S. 310, 316 (1945) (internal citation omitted). The nonresident defendant's purposeful availment must be such that the defendant "should reasonably anticipate being haled into court" in the forum state. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980) (internal citation omitted). The "minimum contacts" prong of the due process analysis may only be satisfied by a finding of either "general" or "specific" jurisdiction.

At issue in this case is the Court's specific personal jurisdiction over Ross.[2] Specific personal jurisdiction focuses on the "relationship among the defendant, the forum, and the litigation." *Walden v. Fiore*, 571 U.S. 277, 284 (2014) (internal citation omitted). The Fifth Circuit follows a three-step analysis to determine whether specific personal jurisdiction exists: (1) whether the defendant has minimum contacts with the forum state, i.e., whether the defendant purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts, and (3) whether the exercise of personal jurisdiction is fair and reasonable. *McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009) (internal citation omitted).

The seminal case on the issue of specific jurisdiction in a defamation case is the U.S. Supreme Court's decision in *Calder v. Jones*, 465 U.S. 783 (1984). In *Calder*, the Supreme Court held that a libelous article published by a national news source gave rise to specific jurisdiction over the reporters because (1) the story concerned the California activities of a California resident, (2) the article was drawn from California sources, and (3) the brunt of the harm, "in terms of respondent's emotional distress and the injury to her professional reputation," was suffered in California. *Id.* at 788–89. The Court found that "California is the focal point both of the story and of the harm

---

[2]  Soignet concedes that, under the standards set forth in *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014), this Court does not have general personal jurisdiction over Ross.

suffered," so jurisdiction was proper "based on the 'effects' of [the defendants'] Florida conduct in California." *Id.* at 789. The Fifth Circuit has since held that "the key to *Calder* is that the effects of an alleged intentional tort are to be addressed as part of the analysis of the defendant's relevant contacts with the forum." *Eagle Metal Prods., Inc. v. Keymark Enters., LLC*, 651 F. Supp. 2d 577, 585 (N.D. Tex. 2009) (Lynn, J.) (quoting *Allred v. Moore & Peterson*, 117 F.3d 278, 286 (5th Cir. 1997)).

> **2.      This Court has specific jurisdiction over Ross because Texas is the focal point of Ross's defamatory statements and Soignet's harm.**

Ross claims that his defamatory statements are about Mr. Soignet's behavior in Louisiana at the work place, and that "[n]one of these events occurred in Texas; instead, they primarily occurred in Louisiana." *See* Mot. Dismiss at 11. While it is true that some of Ross's defamatory statements dealt with UCS's office in Louisiana, the most damaging statement alleges that Mr. Soignet is having an affair with Ms. Dufresne, and claims it is occurring during "out of town business trips." *See* Email from R. Ross, Appx. 7. The focal point of this allegation is not Soignet's office, but his relationship with his family, which is located in Texas. *See* Soignet Decl. ¶ 2, Appx. 4. The harm Soignet has suffered is not just to his reputation as a businessman, but as a husband and father in Texas. *Id.* ¶ 6, Appx. 5. In addition, UCS does not just do business in Louisiana—it does significant business in Texas. *Id.* ¶ 3, Appx. 4. Ross's defamatory statements about Soignet's conduct at his company would be felt in Texas as well. *See Eagle Metal Products*, 651 F. Supp. 2d at 588 (holding that, though there were no allegations that the defamatory statements at issue were made to Texas residents, "[i]t is reasonable to expect that the effect of the alleged disparagement and defamation would be felt in Texas, where VPT was principally doing business."). In *Eagle Metal Products*, Judge Lynn held that the Court had personal jurisdiction over a defendant who was accused of calling plaintiff's customers

and claiming plaintiff was cheating them. *Id.* at 588–89. The Court ruled that, because the defendant knew the plaintiff was a Texas resident, he "should have been 'acutely aware' that any resulting harm to VPT would be felt in Texas, and it was reasonably foreseeable that he would be haled into a Texas court as a result." *Id.* at 589. Importantly, the fact that the plaintiff had not alleged that the statements were made in Texas did not change this holding, because the plaintiff was principally doing business in Texas. *Id.* at 588. The same logic applies to Ross's conduct in this case. Ross's wife was an employee of UCS for almost a year, and both she and Ross knew Soignet was a Texas resident. *See* Soignet Decl. ¶ 6, Appx. 5. As a result, Ross should have been "acutely aware" that any resulting harm to Soignet due to his defamatory claim that Soignet was having an extra-marital affair would be felt in Texas. The fact that the defamatory statement was made to a Louisiana resident is not dispositive—it was certainly reasonably foreseeable that Ross would be haled into Texas court by a Texas resident under these circumstances.

Ross relies on two Fifth Circuit cases to support his argument that this Court does not have personal jurisdiction over him—*Revell v. Lidov*, 317 F.3d 467 (5th Cir. 2002) and *Fielding v. Hubert Burda Media, Inc.*, 415 F.3d 419 (5th Cir. 2005). Both cases are distinguishable on their facts. In *Revell*, the Court determined there was no personal jurisdiction over a defendant who posted an allegedly defamatory article about the plaintiff's involvement in a conspiracy related to the terrorist bombing of Pan Am Flight 103 on a university website. 317 F.3d at 469. The Court reasoned that posting the article on an internet website did not specifically target Texas, which had no especial relationship to Pan Am Flight 103. *Id.* at 475. And the Court further emphasized that the defendant did not know the plaintiff was a Texas resident in the first place. *Id.* at 475–76. This is simply not

the case here—the defamatory email at issue was targeted Soignet's marital relationship, which is located in Texas, a fact that Ross *knew*. *See* Soignet Decl. ¶ 6, Appx. 5.

*Fielding* also deals with defamatory statements about an affair. In *Fielding*, the Fifth Circuit held there was no personal jurisdiction over certain German publishers who published an article about an affair between the Swiss ambassador to Germany and his alleged mistress. 415 F.3d at 422–24. The Court found that the clear focus of the articles was the alleged affair and its aftermath, which occurred in Germany and Switzerland, where the plaintiffs resided at the time, and the brunt of the harm to the ambassador's reputation and the alleged mistress's health was suffered in Germany, not Texas. *Id.* at 426–27. And again, the Court emphasized that the defendants had no knowledge that harm would result in Texas. *Id.* at 427. Thus, the Court held that Germany was the focal point, not Texas. *Id. Fielding* in fact supports this Court's exercise of personal jurisdiction over Ross—when it comes to affairs, the focal point of the conduct is the place where the alleged infidelity occurs. *Id.* at 426 ("The clear focus of the seven *Bunte* articles was the alleged affair between Borer and Rowe and its aftermath, activities which occurred in Germany and Switzerland."). In this case, the focal point is Texas, where Soignet resides with his family. *See* Soignet Decl. ¶¶ 2, 6, Appx. 4–5.

It is not a mere fortuity that Soignet resides in Texas. Instead, Ross's defamatory statements were intentionally directed at Soignet's personal relationship with his wife, which is centered in Texas. It should come as no surprise that to Ross that he would be haled into a Texas court after making such statements, given his knowledge that Soignet resides in Texas, a fact that Ross knew. Accordingly, Ross has sufficient minimum contacts to support this Court's exercise of specific personal jurisdiction.

3.    **The exercise of personal jurisdiction over Ross would not offend traditional notions of fair play and substantial justice.**

The exercise of personal jurisdiction over Ross in this case would not offend traditional notions of fair play and substantial justice. *Stuart v. Spademan*, 772 F.2d 1185, 1191 (5th Cir. 1985) (quoting *Int'l Shoe*, 326 U.S. at 316). When a plaintiff makes a *prima facie* case that the defendant has "minimum contacts" with the forum state, the burden of proof shifts to the defendant to show that the exercise of jurisdiction would be unreasonable. *Luv N' care, Ltd. V. Insta-Mix, Inc.*, 438 F.3d 465, 473 (5th Cir. 2006) (internal citation omitted). The fairness of exercising personal jurisdiction is determined by balancing several factors, including: (1) the burden on the nonresident defendant; (2) the interests of the forum state; (3) the plaintiff's interest in convenient and effective relief; (4) the judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several states in furthering fundamental substantive social policies. *World-Wide Volkswagen*, 444 U.S. at 292. Cases where personal jurisdiction offends traditional notions of fair play and substantial justice "are limited to the *rare situation* in which the plaintiff's interest and the state's interest in adjudicating the dispute in the forum are so attenuated that they are clearly outweighed by the burden of subjecting the defendant to litigation within the forum." *GSK Techs., Inc. v. Schneider Elec., S.A.*, No. 6:06CV361, 2007 WL 788343, at *3 (E.D. Tex. Mar. 14, 2007) (emphasis added).

*First*, while Ross makes numerous arguments that this suit would be excessively burdensome on him, an individual, he presents no evidence whatsoever to support these assertions. *See generally* Mot. Dismiss. Without such evidence, he cannot carry his burden to demonstrate this Court's exercise of jurisdiction would be unreasonable. *Luv N' care*, 438 F.3d at 473. And even if Ross did present evidence, "[i]t is well recognized that modern communication and transportation have made

defending a lawsuit in a foreign tribunal less burdensome." *GSK*, 2007 WL 788343, at *3. As for Ross's concerns regarding hiring local counsel and counsel in Louisiana, there is no requirement that Ross have two lawyers, one in Louisiana and one in Texas. And with respect to Ross's concern that this Court cannot subpoena out-of-state witnesses, that is simply not accurate—Ross can issue discovery subpoenas under Rule 45 to obtain the testimony and documents he allegedly needs. FED. R. CIV. P. 45(c)(2). There is no rule that Ross is entitled to subpoena witnesses to give live testimony at trial.

*Second*, with respect to Ross's argument that Soignet's career and business reputation is substantially based in Louisiana is not only inaccurate, but ignores the fact that Ross has attacked Soignet's personal relationships with his wife and family, which are based in Texas. Texas has an interest in adjudicating defamation claims against its residents. In addition, UCS does substantial business in Texas, such that the harm to Soignet's business reputation and career has been, and will be, felt in Texas. *See* Soignet Decl. ¶ 6, Appx. 5.

*Finally*, Ross does not offer any arguments or evidence regarding the third, fourth, or fifth elements listed above. *See generally* Mot. Dismiss. While the fourth and fifth factors are not directly applicable to this case, the third factor also weighs in Soignet's favor. Soignet has an interest in vindicating himself as soon as possible—the longer this case is tied up procedurally, the longer Ross's statements can go without challenge or rebuke, and the more damage to Soignet's personal and business reputation will accumulate.

Accordingly, because Ross presents no evidence to carry his burden to show this case is a *rare situation* in which Soignet and Texas's interest in adjudicating the dispute in Texas are so attenuated that they are clearly outweighed by the burden of subjecting Ross to litigation in Texas,

the assertion of personal jurisdiction over Ross does not offend the traditional notions of fair play and substantial justice. Thus, Soignet respectfully requests that the Court deny Ross's Motion to Dismiss under Rule 12(b)(2).

### 4.   The Court can exercise its discretion to transfer this case to the Eastern District of Louisiana.

A dismissal for lack of personal jurisdiction is without prejudice. *Guidry v. U.S. Tobacco Co., Inc.*, 188 F.3d 619, 623 n.2 (5th Cir. 1999). The Court has discretion to transfer this case rather than to dismiss it. 28 U.S.C. §1406(a). Thus, if the Court is inclined to grant Ross's Motion to Dismiss on 12(b)(2) grounds, it would conserve judicial resources and serve the interests of justice to transfer this case to the Eastern District of Louisiana, where Ross resides, instead of dismissing this case and forcing Soignet to refile.[3] Accordingly, should the Court determine it does not have personal jurisdiction over Ross (which it does), Soignet respectfully asks the Court to transfer this case to the Eastern District of Texas pursuant to 28 U.S.C. § 1406(a).

### PLAINTIFF'S RESPONSE TO DEFENDANT'S RULE 12(B)(6) MOTION TO DISMISS

A 12(b)(6) motion asserts the Complaint "fail[s] to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). Rule 8 governs pleading requirements, requiring only facts sufficient to put the defendant on notice of the entitlement to relief. Rule 8(a)(2) specifically requires "a short and plain statement showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2).

These rules provide a "simplified notice pleading standard," relying "on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of

---

[3]   Soignet does not concede that Ross's Motion to Transfer pursuant to 28 U.S.C. § 1404(a) is valid, or that this case should be transferred in the absence of a ruling on Ross's Motion to Dismiss under Rule 12(b)(2). Soignet makes this request solely in the event the Court determines that it does not have personal jurisdiction over Ross (which it does).

unmeritorious claims." *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 512 (2002). The merits of undisputed claims are resolved after discovery, not on 12(b)(6) motions.

Notice pleading requires only a statement sufficient to "give the defendant fair notice of what the … claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 545 (2007). In *Twombly*, plaintiffs were a putative class amounting to roughly 90% of all telephone and telephone-based internet subscribers, who alleged a conspiracy by service providers to manipulate the markets in violation of the Sherman Act. *Id.* at 550–51. Plaintiffs only alleged the service providers exhibit "parallel behavior," which could have been independent, coincidental, self-interested business decisions; to allege a conspiracy under the Act, plaintiffs needed to allege an agreement by which defendants conspired. *Id.* at 566.

The plaintiff in *Twombly* did not plead an essential element of its antitrust conspiracy claim--an agreement to conspire. *Id.* That is clearly distinguishable from the case at bar, where Soignet pleaded facts necessary to establish a claim for defamation against Ross. In separate paragraphs, Soignet details his position as President of UCS; the business services in which UCS is engaged; the background facts on the Company's employment of Defendant's wife, Becky Ross, detailing her dates of employment by UCS and terminations from that employment. *See* Orig. Pet. ¶¶ 6–9. Further, Plaintiff specifically sets forth the events following the second termination of Defendant's wife by UCS, including threats by Defendant and counsel to initiate claims against the Company. *Id.* ¶ 9. The Complaint further specifies that after the termination of Defendant's wife by UCS, Ross sent email correspondence to Perry Dufresne, husband of UCS's Controller, which included libelous, defamatory and untrue statements about Soignet. *Id.* ¶ 10–11. These paragraphs of the Complaint sets forth the date of the improper email and specifically elaborates that it included allegations that

Soignet made inappropriate comments regarding one or more UCS employees. *Id.* Soignet further details that the email "included broad, false and defamatory allegations of fact relating to Plaintiff's purported improper innuendos and past patterns of behavior." *Id.* ¶ 11. In addition, in the Complaint, Soignet details his belief that Defendant has made false and defamatory statements about Soignet to others, which have damaged and will continue to damage him. *Id.* ¶ 12.

Accordingly, pursuant to the simplified notice pleading standard contained in the Federal Rules of Civil Procedure and interpreting jurisprudence, Soignet has given the Defendant fair notice of what the claim is and the grounds upon which it rests. *See Vendever LLC v. Intermatic Mfg. Ltd.*, Civil Action No. 3:11-CV-201-B, 2011 WL 4346324, at *5 (N.D. Tex. Sept. 16, 2011) (stating that, to state a claim for defamation, a plaintiff need only allege the time and place of publication, the alleged defamatory statement, and the speaker). As discussed above, the Complaint need not set out detailed factual allegations, but something more than labels and conclusions is required. Soignet has identified who made the defamatory statement, when it was made, the context in which it was made, whether it was made orally or in writing, the substance of the statement, and whether it was made to a third party, all of the exact specifics which Defendant represents are required. *See* Mot. Dismiss at 18–19. Ross has cited no controlling jurisprudence which would require that the defamatory email be attached to the Complaint or exactly quoted.[4]

As discussed, the Federal Rules of Civil Procedure rely on liberal discovery rules and summary judgment motions to define disputed facts and issues and dispose of unmeritorious claims. Based on Soignet's pleading, Ross can likely find the email he sent to Mr. Dufresne in his own email.

---

[4]    Soignet includes the June 16 email in his Appendix solely in support of his Response to Defendant's Motion to Dismiss under Rule 12(b)(2), and in no way should this act be construed as a concession that the email should have been attached to his Original Petition when he filed it in state court.

Or, Ross can obtain a copy of the subject email by sending one single Request For Production of Documents, which is the procedure envisioned by the Federal Rules, rather than requiring Soignet to publish the defamatory email into the public court record. In addition, Ross's arguments represent or imply that Soignet needs to prove every element of his claim at the pleading stage. Ross calls into question the veracity of Soignet's allegations, apparently based upon representations made by his wife in an EEOC charge which had not even been filed at the time this lawsuit was initiated. *See* Mot. Dismiss at 18–22. Obviously, these arguments are premature at this stage, as a Court considering a 12(b)(6) motion merely analyzes whether the factual allegations, taken as true, put the Defendant on notice of a claim for relief. *Swierkiewicz,* 534 U.S. at 512. The merits of disputed claims are resolved after discovery, not on 12(b)(6) motions. Furthermore, in the Complaint, Soignet specifically sets forth that Defendant published false and defamatory statements about Plaintiff to third persons and identifies the nature and substance of those statements. *See* Orig. Pet. ¶¶ 10–11. Plaintiff has pled that Defendant is strictly liable for these statements, and any other similar and/or defamatory statements, as defamatory *per se*, and Ross acted with actual malice and without justification or privilege in making these statements. *Id.* ¶15–18. In addition, Soignet has set forth the damages claimed. *Id.* at 19. Accordingly, he has adequately pled the defamation cause of action against Ross.

A Rule 12(b)(6) motion to dismiss should be denied if the factual allegations, taken as true and in the light most favorable to the plaintiff, raise plaintiff's right to relief "above the speculative level" or "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Gonzalez v. Kay,* 577 F.3d 600, 603 (5th Cir. 2009). If a complaint does not specify allegations to provide sufficient notice, a Rule 12(e) order for more definite statements of

fact is often the appropriate remedy. *Id.* Again, Soignet's Complaint more than provides sufficient notice of his claims against Ross, and Soignet asks the Court to deny Ross's Rule 12(b)(6) Motion to Dismiss. If the Court disagrees, Soignet respectfully requests leave of Court to amend the Complaint to further specify his factual allegations.

**PLAINTIFF'S RESPONSE TO DEFENDANT'S**
**MOTION TO TRANSFER**

Ross's Motion to Transfer under 28 U.S.C. § 1404 fails for a simple reason—Ross has not presented this Court with a shred of evidence to support his argument that the public and private interest factors weigh in favor of transferring this case to the Eastern District of Louisiana. For that reason alone, the Court should deny Ross's Motion to Transfer. And even if Ross had presented evidence supporting his conclusory statements, the relevant factors do not weigh against transferring this suit to Louisiana.

**A.      Argument and Authorities.**

**1.      Legal Standard.**

To obtain a transfer to the Eastern District of Louisiana, Ross must show that there is "good cause," meaning he must satisfy the statutory requirements and clearly demonstrate that a transfer is "for the convenience of the parties and witnesses, in the interest of justice." *In re Volkswagen of America, Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (internal citation omitted). Thus, when the transferee venue is *not clearly more convenient* than the venue chosen by the plaintiff, the plaintiff's choice should be respected *Id.* To make this determination, the court considers the private and public interest factors identified in Ross's Motion to Transfer. *See* Mot. Dismiss at 23. A court may not transfer a case where doing so only shifts the venue's inconvenience from one party to the other.

*Transparent Energy LLC v. Premiere Mktg. LLC*, Case No. 3:19-cv-03022-L, 2020 WL 4678438, at *2 (N.D. Tex. July 28, 2020) (Fitzwater, J.).

The moving party bears the burden of proving *by a preponderance of the evidence* that transfer is appropriate. *Id.* at *2 (internal citations omitted). This requires "a particularized showing regarding why transfer is necessary, including identification of key witnesses and the general content of their testimony." *Bank One, N.A. v. Euro-Alamo Invs., Inc.*, 211 F. Supp. 2d 808, 812 (N.D. Tex. 2002).

**2.    Ross presents no evidence, so he cannot carry his burden that the transfer is appropriate.**

As stated by Judge Fitzwater, it is Ross's burden to prove by a preponderance of the evidence that the Eastern District of Louisiana is clearly more convenient forum. *Transparent Energy*, 2020 WL 4578438, at *2. Ross has not presented a single piece of evidence aside from his bald contentions in his Brief in Support of its Motion to Transfer, which are not evidence. "Defendants seeking a transfer cannot carry their burden merely by making unsupported assertions, but rather they must properly establish relevant venue facts by affidavit, deposition or otherwise." *In re Triton Ltd. Sec. Litig.*, 70 F. Supp. 2d 678, 688 (E.D. Tex. 1999) (citing *Plum Tree, Inc. v. Stockment*, 488 F.2d 754, 756–57 (3d Cir. 1973)); *see also U.S. Brass Corp. v. Am. Gas Furnace Co.*, No. Civ. 301CV0414, 2001 WL 1082416, at *3 (N.D. Tex. Aug. 29, 2001) (denying a motion to dismiss because the movant offers "conclusory statements that documents and witnesses are located in New Jersey, yet fails to provide any evidence of this.").

Furthermore, Ross's conclusory allegations do not even address all of the public and private interest factors necessary to justify a transfer under Section 1404(a). Reading Ross's Motion to Transfer in the most sympathetic light possible, he addresses, at best, only 3 factors: (1) the cost of

attendance of willing witnesses (Mot. Dismiss at 24); (2) the availability of compulsory process to secure the attendance of witnesses (Mot. Dismiss at 25); and (3) the local interest in having localized interests decided at home (*Id.*). The other arguments that Ross raises—namely, that the Court should ignore Soignet's chosen forum (Mot. Dismiss at 24)[5]; the relative financial positions of Ross and Soignet (*Id.*)[6]; and conservation of judicial resources (Mo. Dismiss at 25)[7]—are not private or public interest factors and have little bearing on the court's decision.

Without evidence and meaningful engagement with all of the private and public factors at issue under Section 1404(a), Ross's Motion to Transfer should be denied outright. *See Safety-Kleen Sys., Inc. v. McCoy Freightliner, Inc.*, No. 4:10-CV-608, 2011 WL 2009958, at *7 ("Defendant *ignores many of the elements* and *attaches no evidence* to supports its motion. . . . Defendant's total failure to engage in the process of substantively addressing the factors under § 1404(a) is the main reason the motion should be denied.") (emphasis added).

---

[5]     Ross relies on *Silver Knight Sales & Mktg., Ltd. V. Globex Int'l, Inc.*, No. 2:06-cv-123, 2006 WL 3230770 (D. C. Ohio Nov. 6, 2006) for the proposition that Soignet's chosen forum should be given less weight here because the case was removed. *See* Mot. Dismiss at 24. In *Silver Knight*, while the court made this statement, the Court ultimately held the magistrate judge properly found that a related action in Texas was an overriding factor and that transfer was appropriate due to the first-to-file rule. *Id.* at *4. At most, the statement relied on by Ross here is dicta.

[6]     Not only is this argument completely unsupported by any evidence, but Ross relies on an unreported case from the Southern District of Indiana to support this argument, *Volkswagen Aktiengesellschaft v. Dee Eng'g, Inc.*, 1:02-cv-1669-CJM, 2003 WL 1089515 (S.D. Ind. Mar. 4, 2003). This case has no precedential effect on this Court, and it did not even address the specific private or public interest factors raised by Ross in his own Motion to Transfer. *Id.* at *2–*5.

[7]     Ross again relies on an out-of-circuit case, *Donnelly v. Klosters Rederi A/S*, 515 F. Supp. 5, 7 (E.D. Pa. 1981), for the proposition that, because he has raised a jurisdictional challenge, the Court should grant his Motion to Transfer to conserve judicial resources. Ross brought his Motion to Transfer at the same time as his Motion to Dismiss under Rule 12(b)(2), so no resources will be conserved at this point.

**3.      The factors that Ross addresses do not support transferring this case to the Eastern District of Louisiana, and the other factors support keeping this case in the Northern District of Texas.**

As stated above, Ross addresses, at best, three of the eight factors at issue: (1) the cost of attendance of willing witnesses; (2) the availability of compulsory process to secure the attendance of witnesses; and (3) the local interest in having localized interests decided at home. *See* Mot. Dismiss at 24–25.[8] Judge Fitzwater has noted that, with respect to the cost of attendance of willing witnesses and the availability of compulsory process to secure the attendance of non-party witnesses, "the party seeking the transfer must specify clearly . . . the key witnesses to be called and their location and *must make a general statement of what their testimony will cover*." *Transparent Energy*, 2020 WL 4678438, at *4 (emphasis added) (citations omitted); *Prominent Fluids Control, Inc. v. Allen Process Sys., L.L.C.*, Civil Action No. 3:05-CV-2474-M, 2006 WL 8437380, at *2 (N.D. Tex. Apr. 6, 2006). Ross has not provided any evidence regarding any of these witnesses' potential testimony at trial, so this factor "does not weigh in favor of transfer." *Transparent Energy*, 2020 WL 4678438, at *4; *Prominent Fluids*, 2006 WL 8437380, at *2. Ross cannot succeed on these two factors, which have been held to be "the most significant" in deciding a motion to transfer under Section 1404(a). *Sw. Airlines Co. Profit Sharing 401(k) Comm. V. UBS Global Asset Mgmt. (Ams.), Inc.*, No. Civ. A. 3:06CV0747-D, 2007 WL 268808, at *3 (N.D. Tex. Jan. 29, 2007) (internal citations omitted); *see also Certain Underwriters at Lloyd's London v. Pete's Car Smart, Inc.*, Civil Action No. 3:05-CV-1147-B, 2005 WL 8158546, at *2 (N.D. Tex. Dec. 2, 2005) ("The Court finds

---

[8]    Ross's Motion is not clear that these factors are being argued. But Ross argues litigating in Texas "would impose enormous litigation expenses" for his counsel and he notes that he and his wife reside in Louisiana. *See* Mot. Dismiss at 24–25. This appears to be an argument based on the costs of attendance of willing witnesses. Ross also notes other non-party witnesses reside in Louisiana and are outside subpoena range, which appears to address the availability of compulsory process to secure the attendance of witnesses. *Id.* at 25.

that PCS's utter failure to specifically identify key witnesses and outline the substance of their testimony precludes the Court from being able to undertake a proper evaluation of the propriety of transfer here.") (internal citation omitted).

With respect to the local interest in having localized interests decided at home, Ross argues that Louisiana has a greater interest in determining this case because his defamatory statement was published in Louisiana, and the case will ultimately be about the truth of his statements, which allegedly center around the alleged sexual harassment and hostile work environment at UCS's office in Louisiana. *See* Mot. Dismiss at 25. Again, Ross ignores the other statement in his email—that Soignet and Mrs. Dufresne were engaged in an extra-marital affair on out-of-town business trips— which is not based on any tie to Louisiana. *See* Email from R. Ross, Appx. 7. Indeed, as argued in the Response to Defendant's 12(b)(2) Motion to Dismiss, the affair allegations directly impact Soignet in Texas, where he and his family reside. *See* Soignet Decl. ¶¶ 2, 6, Appx. 4–5. And the allegations regarding the UCS office environment impact Soignet's business as a whole, as UCS does significant business in Texas. *Id.* ¶¶ 3, 6, Appx. 4–5. Accordingly, this factor is at best neutral, as there is no evidence that Louisiana's interest is any greater than Texas's interest.

With respect to the other factors that Ross does not address, those factors are either neutral, or weigh against transfer.

- *First*, the relative ease of access to sources of proof—Ross has presented no evidence concerning the volume of documents or the difficulty in transporting them to Texas for trial. This factor is thus neutral at best. *NDC Invs. LLC v. Lehman Bros., Inc.*, Civil Action No. 3:05-CV-2036-D, 2006 WL 2051030, at *4 (N.D. Tex. July 21, 2006).

- *Second*, all other practical problems that make trial of a case easy, expeditious and inexpensive—"in rare and special circumstances a factor of 'delay' or 'prejudice' might be relevant in deciding the propriety of transfer, but only if such circumstances are established by clear and convincing evidence." *Transparent Energy*, 2020 WL

4678438, at *4. Because Ross has not presented any evidence or argument on this factor, it weighs against transfer. *Id.* at *4.

- *Third*, the administrative difficulties flowing from court congestion—according to the Administrative Office of the United States Courts, the median time interval for case resolution in this district is 7 months, while the median time interval in the Eastern District of Louisiana is almost double at 11.5 months. *See* Ex. 2-A, Appx. 11. This factor weighs in favor of denying Ross's Motion to Transfer.

- *Fourth*, the familiarity of the forum with the law that will govern the case—Soignet's defamation claim has been brought under Texas law, and Ross does not dispute that this is appropriate. *See generally* Mot. Dismiss. It stands to reason that a federal court in Texas would have more familiarity with Texas common law than a federal court in Louisiana, but at best, this factor is neutral.

- *Fifth*, the avoidance of unnecessary problems of conflict of laws or application of foreign law—because Soignet's defamation claim is brought under Texas law, maintaining this suit in Texas avoid problems of conflict of laws or the application of foreign law, so this factor also weighs in favor of denying Ross's Motion to Transfer.

Thus, even if Ross had presented evidence to support the three factors he argues in his Motion to Transfer, which he did not, those three factors do not support transferring this case to the Eastern District of Louisiana. Ross has failed to demonstrate by a preponderance of the evidence that the Eastern District of Louisiana is clearly a more convenient forum for this case. Accordingly, Soignet respectfully requests that the Court deny Ross's Motion to Transfer.

## CONCLUSION AND PRAYER

This Court has specific personal jurisdiction over Ross. While Ross tries to make this suit all about Soignet's office environment, he ignores the most slanderous statement in his email to Mr. Dufresne—the allegation that Soignet and Mrs. Dufresne are having an extra-marital affair. That statement makes the focal point of this lawsuit Texas, where Andy and his family live. Thus, there is no basis to dismiss this suit on Rule 12(b)(2) grounds. There is also no basis to dismiss this suit on Rule 12(b)(6) grounds because Soignet's Complaint gives Ross fair notice of his claim under Rule 8. Finally, Ross's Motion to Transfer fails because he produced no evidence to support his

arguments—without evidence, he cannot carry his burden to show the Eastern District of Louisiana is clearly a more convenient forum. And even if he had produced evidence, Ross's arguments do not support a transfer.

For the foregoing reasons, Plaintiff Elmo Andrew Soignet, III respectfully requests that this Court deny Defendant Ricky Ross's Motion to Dismiss Complaint, or in the alternative, to Transfer Venue, in its entirety.

Dated: October 2, 2020                          Respectfully submitted,


                                                /s/ Monica Gaudioso
                                                Cathy L. Altman
                                                   State Bar No. 00794946
                                                   caltman@ccsb.com
                                                Monica Gaudioso
                                                   State Bar No. 24084570
                                                   mgaudioso@ccsb.com
                                                 CARRINGTON COLEMAN SLOMAN
                                                   & BLUMENTHAL, L.L.P.
                                                901 Main Street, Suite 5500
                                                Dallas, Texas  75202
                                                (214) 855-3000
                                                FAX (214) 580-2641

                                                Thomas P. Henican (Texas Bar No. 24075926)
                                                (*pro hac vice* to be filed)
                                                RIESS LEMIEUX, LLC
                                                1100 Poydras Street, Suite 1100
                                                New Orleans, Louisiana 70163
                                                Telephone:  (504) 581-3300
                                                Facsimile:  (504) 581-3310
                                                Email:  thenican@rllaw.com

                                                **Attorneys for Plaintiff Elmo Andrew Soignet, III**