IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ELMO ANDREW SOIGNET, III, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:20-CV-2418-K |
| | § | |
| RICKY ROSS, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court are Defendant Ricky Ross's (1) Motion to Dismiss the Complaint, or in the Alternative, to Transfer Venue (the "Motion to Dismiss") (Doc. No. 9) and (2) Motion to Strike Paragraph 6 of Plaintiff's Declaration in Support of His Response to the Motion to Dismiss (the "Motion to Strike") (Doc. No. 23).  After careful consideration of the Motion to Strike, responsive briefing, and applicable law, the Court **GRANTS IN PART** and **DENIES IN PART** the Motion to Strike.  After considering the Motion to Dismiss, responsive briefing, Complaint, and applicable law, the Court **GRANTS** the Motion to Dismiss for lack of personal jurisdiction and **TRANSFERS** this case to the Eastern District of Louisiana in lieu of dismissal pursuant to 28 U.S.C. § 1406(a).

## I.     Factual and Procedural Background

This is a defamation case in which Defendant Ricky Ross ("Defendant Ross") sent an e-mail alleging that Plaintiff Elmo Andrew Soignet, III ("Plaintiff Soignet") was

1

behaving inappropriately toward a female employee, Mrs. Wendy Dufresne, and potentially having an affair with her.  Plaintiff Soignet is the president of Utility Construction Services, LLC ("UCS"), a Louisiana company that also does business in Texas.  Though his business is principally based in Louisiana, Plaintiff Soignet is a Texas citizen and resides in Texas with his wife, niece, and nephew.  Defendant Ross's wife, Becky Ross, was formerly employed by UCS as an administrative assistant for almost a year.  After Defendant Ross's wife was fired, Defendant Ross sent the allegedly defamatory e-mail to the husband of Mrs. Dufresne, Mr. Perry Dufresne, concerning rumors about Plaintiff Soignet's allegedly inappropriate behavior in and outside the office with Mr. Dufresne's wife.

According to the record, Defendant Ross is a citizen of Louisiana, and he and his wife reside within the Eastern District of Louisiana.  Mr. and Mrs. Dufresne also reside in Louisiana.  Defendant Ross's e-mail was sent and received in Louisiana and concerned Plaintiff Soignet's misconduct at UCS's Louisiana office and "out of town business trips."  Defendant Ross states in his affidavit that he was referring to "out of town business trips" within Louisiana, not Texas.  Plaintiff Soignet was apparently given access to the e-mail by Mrs. Dufresne in Louisiana.

Plaintiff Soignet filed his petition in Texas state court, and Defendant Ross removed to this Court on the basis of diversity jurisdiction.  Defendant Ross filed a Motion to Dismiss the Complaint, or in the Alternative, to Transfer Venue.  Defendant Ross seeks dismissal under Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6), or

in the alternative, a venue transfer to the Eastern District of Louisiana under 28 U.S.C. § 1404(a). Plaintiff Soignet filed an opposition to the Motion to Dismiss and a memorandum in support (Doc. No. 20), which included a declaration in support of his response (Doc. No. 20 at 5). Defendant Ross moved to strike several statements in paragraph 6 of Plaintiff Soignet's declaration. The Court will address the Motion to Strike and then the Motion to Dismiss.

## II.    Analysis

The Court first addresses Defendant Ross's objections in the Motion to Strike. The Court then turns to Defendant Ross's arguments as to why this Court does not have personal jurisdiction over him. The Court then addresses the grounds for transfer to the Eastern District of Louisiana.

### a.  Motion to Strike

In the Motion to Strike, Defendant Ross objects to three statements from paragraph 6 of the Declaration of Elmo Andrew Soignet, III (Doc. No. 20 at 5), which Plaintiff Soignet submitted in support of his response to the Motion to Dismiss. Defendant Ross requests that the Court disregard the three statements in considering the Motion to Dismiss because they are not made on personal knowledge and Plaintiff Soignet is not competent to testify on the matters.

The three disputed statements are:

1. "These statements [in Defendant Ross's e-mail] are also very damaging to my relationship with my wife and my niece and nephew, who [sic] I live with in Texas."

3

2. "Based on Becky Ross's tenure with UCS, both she and her husband, Defendant Ricky Ross, are aware that I have a family who live in Texas with me, and that UCS does significant business in Texas."

3. "It is clear that one of the main purposes of Ricky Ross's email is to attack my personal relationship with my wife in Texas."

*Id.*

As to the first statement, the Court finds that the statement is within the personal knowledge of Plaintiff Soignet because Plaintiff Soignet is competent to testify from his own personal knowledge about the state of his relationships. The Court **DENIES** the Motion to Strike with respect to the first statement.

Defendant Ross argues that the second and third statements are pure speculation. The Court agrees. As to the second statement, Plaintiff Soignet did not lay sufficient foundation to show that he has personal knowledge that Defendant Ross and Becky Ross are aware of Plaintiff Soignet's family in Texas and UCS's Texas business. Plaintiff Soignet argues that Becky Ross had personal knowledge of Plaintiff Soignet's family in Texas and UCS's Texas business by serving as an administrative assistant at UCS. While Becky Ross may certainly be aware of Plaintiff Soignet's family in Texas and UCS's Texas business, her possible knowledge is not imputed on Defendant Ross simply by the fact that he is her husband. *See Niagara Fire Ins. Co. v. Everett*, 292 F.2d 100, 104 (5th Cir. 1961) (finding that where there is no evidence that a wife has personal knowledge of a fact, the couple's martial relationship was

4

insufficient of itself to charge the wife with the husband's knowledge of that fact or him with agency).

Moreover, Plaintiff Soignet did not lay the foundation to show he has personal knowledge of what Becky Ross knows. Plaintiff Soignet cites to a case from the Western District of Texas that says: "Personal knowledge can be satisfied based on the individual's stated position within a company and statement that he had personal knowledge of the facts so stated." *Young v. Mitsubishi Motors Corp.*, No. 1:19-CV-00175-LY, 2019 WL 6327581, at *3 (W.D. Tex. Nov. 25, 2019) (citing *Diamond Offshore Co. v. A&B Builders, Inc.*, 302 F.3d 531, 541, n.13 (5th Cir. 2002), *overruled on other grounds by, Grand Isle Shipyard, Inc. v. Seacor Marine, LLC*, 589 F.3d 778 (5th Cir. 2009)). Plaintiff Soignet seems to use this rule to argue that because of Becky Ross's position at UCS, she knows where Plaintiff Soignet's family lives and where UCS does business. However, as required by the rule in *Young*, there is no statement from Becky Ross in the record stating that she knows such facts.  Plaintiff Soignet points out that his Declaration states that the statements therein are based on his personal knowledge, but *Young* requires a statement from the person whose personal knowledge is being established.  Here seemingly, Becky Ross.

Even if Plaintiff Soignet was attempting to use *Young* to establish his own personal knowledge—acquired through his position as UCS's president—of what Becky Ross knows, his attempt fails.  The court in *Young* did not hold that one is deemed— by his stated position in a company—to have established that he has personal

knowledge of what *another person knows*. *Id.* The court in *Young* ruled that one worker's personal knowledge of company strategies and processes was established by stating his position and stating that he had personal knowledge of those facts. *Id.* The worker's statement in *Young* did not concern his personal knowledge of *another person's awareness* of certain facts, but rather concrete, objective facts that *the worker knew* by function and necessity of his own job. *Id.* While the Fifth Circuit has noted that a declarant may satisfy the personal knowledge requirement based on his position as a corporate employee, Plaintiff Soignet did not provide facts sufficient for the Court to find that it is reasonable to infer that Plaintiff Soignet knows what Becky Ross knows. *See Cutting Underwater Techs. USA, Inc. v. Eni U.S. Operating Co.*, 671 F.3d 512, 516 (5th Cir. 2012) (citing *DIRECTV, Inc. v. Budden*, 420 F.3d 521, 530 (5th Cir. 2005)) ("Personal knowledge may be demonstrated by showing that the facts stated 'reasonably' fall within the 'sphere of responsibility' of the affiant as a corporate employee.").

Notably, it is inconsequential whether Plaintiff Soignet sufficiently laid the foundation to testify to what Becky Ross knows about his family and business because only Defendant Ross's knowledge of Plaintiff Soignet's family and business is material. Regardless, Plaintiff Soignet did not lay the foundation to show that he has personal knowledge of the facts in the second statement. The Court therefore **GRANTS** the Motion to Strike with respect to the second statement.

As to the third statement, Defendant Ross objects that the statement is speculative, is conclusory, and lacks foundation. Because there is no foundational

evidence that Defendant Ross knows Plaintiff Soignet has a wife in Texas or intended to harm the spousal relationship and because the e-mail does not mention Plaintiff Soignet's wife, the Court **GRANTS** the Motion to Strike with respect to the third statement.

In sum, the Court **DENIES** the Motion to Strike the first sentence and **GRANTS** the Motion to Strike the second and third sentence in accordance with the foregoing.

### b. Motion to Dismiss for Lack of Personal Jurisdiction

Having resolved the Motion to Strike, the Court now addresses the Motion to Dismiss. For the reasons stated below, the Court finds that it lacks personal jurisdiction over Defendant Ross. The Court may dismiss this case without prejudice or, in the interest of justice, transfer the case to a proper venue. 28 U.S.C. § 1406(a). Finding that justice is served by a transfer, the Court transfers this case to the Eastern District of Louisiana.

### i. Applicable Law

In considering whether a federal court has personal jurisdiction over a nonresident defendant, the court must consider: (1) whether the long-arm statute of the state in which it sits confers personal jurisdiction over the defendant; and, if so, (2) whether the exercise of personal jurisdiction is consistent with Due Process Clause of the Fourteenth Amendment. *Mink v. AAAA Dev. LLC*, 190 F.3d 333, 335 (5th Cir. 1999). The Supreme Court of Texas has interpreted the state's long-arm statute "to

reach as far as the federal constitution permits." *Schlobohm v. Schapiro*, 784 S.W.2d 355, 357 (Tex. 1990). Therefore, this Court need only address whether the exercise of personal jurisdiction over the nonresident defendant would be consistent with the Due Process Clause of the Fourteenth Amendment. *Mink*, 190 F.3d at 335–36.

To establish that personal jurisdiction is proper, "[t]he plaintiff must show that (1) the defendant purposefully availed himself of the benefits and protections of the forum state by establishing 'minimum contacts' with the forum state, and (2) the exercise of personal jurisdiction over that defendant does not offend traditional notions of 'fair play and substantial justice.'" *Moncrief Oil Int'l v. OAO Gazprom*, 481 F.3d 309, 311 (5th Cir. 2007) (citing *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945)); *see also Asahi Metal Indus. Co., Ltd. v. Superior Court of California, Solano County*, 480 U.S. 102, 113 (1987) (describing the factors a court considers in analyzing whether exercising jurisdiction over the defendant complies with "traditional notions of fair play and substantial justice" (quoting *Int'l Shoe*, 326 U.S. at 316)).

"Sufficient minimum contacts will give rise to either specific or general jurisdiction." *Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 431 (5th Cir. 2014) (quoting *Revell v. Lidov*, 317 F.3d 467, 470 (5th Cir. 2002)). A court has general jurisdiction over a defendant when the defendant's "affiliation with the State are so 'continuous and systematic' as to render [the defendant] essentially at home in the forum State." *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). Specific jurisdiction

over a defendant exists when the defendant has "singular or sporadic" contacts with the forum state, but "only if the cause of action asserted arises out of or is related to those contacts." *Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp., Ltd.*, 818 F.3d 193, 212 (5th Cir. 2016) (emphasis omitted).  Plaintiff Soignet claims only specific jurisdiction.

The Fifth Circuit uses a three-prong test to determine whether specific personal jurisdiction over a defendant exists: "(1) whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable." *McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009) (citing *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 271 (5th Cir. 2006)).

When a defendant challenges whether a district court has personal jurisdiction over him or her, "[t]he plaintiff has the burden to . . . show[ ] that personal jurisdiction is proper." *Monkton Ins. Servs.*, 768 F.3d at 431 (citing *Luv N' Care, Ltd. v. Insta–Mix, Inc.*, 438 F.3d 465, 469 (5th Cir. 2006)). "[I]f . . . the court rules on personal jurisdiction without conducting an evidentiary hearing, the plaintiff bears the burden of establishing only a *prima facie* case of personal jurisdiction." *Hazim v. Schiel & Denver Book Publishers*, 647 F. App'x 455, 457 (5th Cir. 2016) (citing *Quick Techs., Inc. v. Sage*

9

*Grp. PLC*, 313 F.3d 338, 343 (5th Cir. 2002); *Sys. Pipe & Supply, Inc. v. M/V VIKTOR KURNATOVSKIY*, 242 F.3d 322, 323–24 (5th Cir. 2001)).

A plaintiff does not have to establish personal jurisdiction by a preponderance of evidence when the Court does not hold an evidentiary hearing. *Bonner v. Triple–S Mgmt. Corp.*, 661 F. App'x 820, 821–22 (5th Cir. 2016). "[The Court] must accept the plaintiff's uncontroverted allegations, and resolve in [the plaintiff's] favor all conflicts between the facts contained in the parties' affidavits and other documentation." *Monkton Ins. Servs.*, 768 F.3d at 431 (quoting *Revell*, 317 F.3d at 469). Although the Court must accept a plaintiff's jurisdictional allegations as true, the Court "may consider the contents of the record at the time of the motion," and acceptance of a plaintiff's jurisdictional allegations does not necessarily mean that the plaintiff has established a *prima facie* case for personal jurisdiction. *Hazim*, 647 F. App'x at 457–58 (quoting *Paz v. Brush Engineered Materials, Inc.*, 445 F.3d 809, 812 (5th Cir. 2006)).

## ii. Application of Law to the Facts

Because the parties agree that the Court does not have general jurisdiction over Defendant Ross, the Court turns to the issue of specific jurisdiction. The question is whether Plaintiff Soignet has made out a *prima facie* case for specific jurisdiction with respect to Defendant Ross's contacts with Texas. Plaintiff Soignet argues that the Court has specific jurisdiction over Defendant Ross based on the effects in Texas caused by Defendant Ross's allegedly defamatory e-mail. Defendant Ross argues that the law prevents the exercise of specific jurisdiction over Plaintiff Soignet's claims.

The seminal authority on specific jurisdiction in a libel suit is the Supreme Court's decision in *Calder v. Jones,* 465 U.S. 783 (1984).  In *Calder,* an editor and a writer for the *National Enquirer,* both residents of Florida, were sued in California for libel arising out of an article published in the *Enquirer* about the plaintiff. *See id.* at 784–85.  The Supreme Court upheld the exercise of personal jurisdiction over the two defendants because they had "expressly aimed" their conduct towards California. *Id.* at 789.  The allegedly libelous story concerned the California activities of a California resident, impugning the professionalism of an actress whose television career was centered in California. *Id.*  The article was drawn from California sources, with the "brunt of the harm," including both the California resident's emotional distress and the injury to her professional reputation, felt in California. *Id.*  In sum, California was the focal point both of the story and the harm suffered. *See id.* at 788–89.

The Fifth Circuit Court of Appeals' primary case interpreting *Calder* is *Revell v. Lidov,* 317 F.3d 467 (5th Cir. 2002).  In *Revell*, the Fifth Circuit affirmed a dismissal for lack of personal jurisdiction in a defamation case where a Texas resident sued nonresidents of Texas for allegedly defamatory statements posted on an internet bulletin board of a New York university. *Id.* 468–69.  The Fifth Circuit explained that for *Calder* to apply, the brunt of the harm from a defendant's alleged defamation had to be felt in the forum state *and* the forum had to be the geographic focus, or focal point, of the publication. *See id.* at 474 n.48.  Applying that test, the Fifth Circuit held that specific jurisdiction did not exist over a defendant because the allegedly

defamatory statements "contain[ed] no reference to Texas," did not "refer to the Texas activities" of the plaintiff, were "not directed at Texas readers," and did not find their "largest audience in Texas." *Id.* at 473. The Fifth Circuit also explained that "[k]nowledge of the particular forum where a potential plaintiff will bear the brunt of the harm forms an essential part of the *Calder* test." *Id.* at 475. Even though a defendant must know that the harm of the defamation will be disruptive wherever the plaintiff resides, that is the case with nearly any defamation and a *more direct aim* is required. *Id.* at 476 (emphasis added). Residing in a forum and suffering harm there does not alone support specific jurisdiction under *Calder*. *See id.* at 473.

In this case, Defendant Ross argues that neither (i) the "brunt of the harm" nor (ii) the geographical focus of the e-mail were in Texas, while Plaintiff Soignet claims that the e-mail was "intentionally directed at Soignet's personal relationship with his wife, which is centered in Texas." Doc. No. 19 at 7. To support his claim, Plaintiff Soignet states that Defendant Ross *knew* that he lived in Texas with his wife and family and that the e-mail targeted Plaintiff Soignet's martial relationship in Texas. *Id.*

### 1. The Brunt of the Harm

It is not clear that the "brunt of the harm" was felt in Texas as the evidence tends to show harm felt in both Louisiana and Texas. Plaintiff Soignet alleges that the e-mail caused him to suffer harm in marital and familial relationships in Texas. He also points out that because UCS conducts business in Texas, professional harm could be felt in Texas as well. Professional harm is undoubtedly felt in Louisiana—the

location of the Dufresnes, the e-mail exchange, the alleged inappropriate behavior by Plaintiff Soignet, and UCS's principal place of business.

It is also not clear from the record that Defendant Ross *knew* Plaintiff Soignet would suffer harm specifically in Texas, as required under *Revell* and *Calder*.  While, as in *Revell*, Defendant must have known that the harm of the e-mail would hit home wherever Plaintiff Soignet resided, there is not a direct aim at Texas because Defendant Ross's affidavit states that he "did not know Plaintiff was a resident of Texas. [He] also did not know Plaintiff lived with his Niece and Nephew." Doc. No. 26 at 5.  His affidavit further asserts that "[Plaintiff Soignet] never discussed his family or personal life with [Defendant Ross]" in the "one time" Defendant Ross has ever spoken to Plaintiff Soignet. *Id.* at 4–5.  Defendant Ross further declared that when Defendant Ross "spoke to [Plaintiff Soignet] he told [Defendant Ross] he lived in Raceland Louisiana." *Id.* at 5.  As previously addressed, the Court granted Defendant Ross's Motion to Strike Plaintiff Soignet's statement in his Declaration that Defendant Ross knew he lived in Texas with his family.  Defendant Ross is not deemed to know of Plaintiff Soignet and his wife's residence merely based on Becky Ross's position as a UCS administrative assistant.  Plaintiff Soignet presented no other evidence in the record to show that Defendant Ross knew Plaintiff would bear harm to his familial relationships in Texas, and as such, there is no evidence of a direct aim at Texas.

## 2.  The Geographic Focus

Even if the "brunt of the harm" was felt in Texas and Defendant Ross *knew* it would be so (which the Court does not find), *Revell* states that *Calder* also requires Plaintiff Soignet to make a *prima facie* showing that Texas was the geographic focus, or focal point, of the e-mail.  Plaintiff Soignet has not done so.  In *Calder*, the Supreme Court found that the exercise of specific jurisdiction in California was appropriate because the allegedly defamatory story concerned California activities of a California resident, drawn from California sources, marred the actress's professional reputation in California, and caused the California resident to suffer the brunt of the harm in California. *See Calder*, 465 U.S. at 788–89.

To establish specific jurisdiction of Texas courts here, the e-mail must, at the very least, refer to Plaintiff Soignet's actions in Texas and rely on Texas sources in some way. *See Revell,* 317 F.3d at 473–74.  This standard has not been met.  The e-mail discusses Plaintiff Soignet's activities in Louisiana, relying on Louisiana sources and marring his professional reputation in Louisiana.  While the e-mail mentions Plaintiff Soignet's alleged behavior toward Mrs. Dufresne at UCS's Louisiana office and on "out of town business trips," Defendant Ross attests in his affidavit that he "did not refer to Texas when [he] wrote 'out of town business trips' in the e-mail.  [He] was referring to business trips within the state of Louisiana that were not in Thibodaux," where UCS's Louisiana office is located. Doc. No. 26 at 5.  The e-mail discussed conduct in Louisiana and makes no reference to Texas. Doc. No. 20 at 7.

14

In determining the e-mail's geographic focus, *Revell* requires the Court to look at more than the content of the e-mail but also the audience. *Id.* at 473.  Here, Defendant Ross's e-mail targeted an audience of one—Mr. Dufresne.  Doc. No. 20 at 7.  Defendant Ross sent the e-mail from Louisiana to Mr. Dufresne in Louisiana.  *See* Doc. No. 26 at 5.  Defendant Ross did not distribute the e-mail to Texas and, as he attests in his affidavit, he did not intend for the e-mail to reach anyone in Texas.  *Id.*  Moreover, Plaintiff Soignet apparently gained access to the e-mail from Mrs. Dufresne, who is also in Louisiana. Doc. No. 20 at 5.

In short, Texas is not the geographical focus on the e-mail: The e-mail was sent from and to Louisiana, does not mention Texas, does not mention any conduct by Plaintiff Soignet in Texas, does not mention Plaintiff Soignet's wife, and was not forwarded by Defendant Ross to Texas or intended to reach anyone in Texas.  Because Texas cannot be called the geographic focus, the Court finds that Plaintiff Soignet has not met his burden of establishing minimum contacts with Texas.

Circling back to the Fifth Circuit's three-prong test for specific jurisdiction, the first prong is not satisfied because Defendant Ross does not have minimum contacts with the forum state.  Because the Court finds that Plaintiff Soignet did not make a *prima facie* case of minimum contacts in Texas, the Court need not address the second and third prongs—whether the claims arise out of minimum contact with Texas and whether asserting jurisdiction over Defendant Ross would offend traditional notions of fair play and substantial justice.

15

For the reasons stated above, the Court could dismiss this action without prejudice for lack of personal jurisdiction. *Guidry v. U.S. Tobacco Co., Inc.*, 188 F.3d 619, 623 n.2 (5th Cir. 1999).  The Court has discretion to transfer this case rather than dismiss it. 28 U.S.C. § 1406(a).  "[A] federal court is authorized under 28 U.S.C. § 1406(a) to transfer the action to 'any district or division in which it could have been brought' if the court finds that it is 'in the interest of justice' to transfer the action." *Herman v. Cataphora, Inc.*, 730 F.3d 460, 466 (5th Cir. 2013) (citing *Dubin v. United States*, 380 F.2d 813, 816 (5th Cir. 1967)).

To transfer a case under § 1406(a), "it is enough simply that the court thinks transfer is in the interest of justice." *Glazier Group, Inc. v. Mandalay Corp.*, Civ. A. No. H-06-2752, 2007 WL 2021762, at *13 (S.D. Tex. July 11, 2007) (citation and internal quotation marks omitted).  In deciding to transfer this case under § 1406(a), the Court construes Defendant Ross's arguments concerning venue transfer under § 1404(a) as applicable to its analysis and basis for transferring the case.

Here, Defendant Ross is clearly subject to personal jurisdiction in the Eastern District of Louisiana.  The case could have been filed in the Eastern District of Louisiana, where Defendant Ross is domiciled, and the allegedly defamatory e-mail concerning conduct in Louisiana was sent and received in the Eastern District of Louisiana.  The Eastern District of Louisiana has undisputed jurisdiction over the parties, and venue is clearly proper.  Such a transfer serves the convenience of the parties and conserves judicial resources.

16

Plaintiff Soignet requested this transfer should the Court determine that it does not have personal jurisdiction over Defendant Ross.  Given that Defendant Ross moved to transfer this case to the Eastern District of Louisiana under § 1404(a), this transfer is amenable to both parties under the circumstances.  For the reasons, the Court **GRANTS** the Motion to Dismiss for lack of personal jurisdiction and **TRANSFERS** the case to the Eastern District of Louisiana.

### III.   Other Grounds for Dismissal or Venue Transfer

Because this Court lacks personal jurisdiction over Defendant Ross, it is not necessary to address the grounds for dismissal under Federal Rule of Civil Procedure 12(b)(6) or venue transfer under 28 U.S.C. § 1404(a).

### IV.   Conclusion

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** the Motion to Strike.  The Court also **GRANTS** the Motion to Dismiss for lack of personal jurisdiction and **TRANSFERS** this case to the Eastern District of Louisiana in lieu of dismissal pursuant to 28 U.S.C. § 1406(a).  <u>The clerk of the court **shall** effect the transfer in accordance with the usual procedure.</u>

**SO ORDERED.**

Signed December 16th, 2020.

_Ed Kinkeade_

ED KINKEADE
UNITED STATES DISTRICT JUDGE

17